UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI GHOLSTON,                              Case No. 07-14902

        Plaintiff,                     Avern Cohn
                                           United States District Judge

v.

                                           Michael Hluchaniuk
COMMISSIONER OF                            United States Magistrate Judge
SOCIAL SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 10)

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On November 15, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision denying social security

disability benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Avern Cohn referred this matter to Magistrate Judge

Mona K. Majzoub for the purpose of reviewing the Commissioner's decision

denying plaintiff's claim for a period of disability and disability insurance

benefits.[1]  (Dkt. 2).  This matter was reassigned to the undersigned on January 15,

2008  (Dkt. 3), and is currently before the Court on cross motions for summary

judgment.  (Dkt. 9, 10 and 11).

B.    Administrative Proceedings

Plaintiff filed the instant claim(s) on November 27, 2001, alleging that she

became unable to work on November 21, 1996.  (Tr. at 65).  On February 4, 2004,

plaintiff appeared with counsel before Administrative Law Judge (ALJ) Alfred

Varga, who considered the case *de novo*.  In a decision dated April 27, 2004, the

ALJ found that plaintiff was not disabled.  (Tr. at 243-248).  Plaintiff requested a

review of the decision on April 30, 2004.  (Tr. 249-253).  On July 15, 2004, the

Appeals Council vacated the decision of the ALJ, and remanded the case back to

the ALJ for further consideration.  (Tr. at 255-259).

On May 8, 2006, plaintiff appeared with counsel before the ALJ.  In a

decision dated February 22, 2007,[2] the ALJ again denied benefits.  (Tr. 20-31).

Plaintiff requested a review of the decision of the Appeals Council on February

26, 2007.  (Tr. 17-19).  The ALJ's decision became the final decision of the

---

[1]  Plaintiff's brief dated April 14, 2008 also refers to her claim for
Supplemental Security Income.  (Dkt. 9, p. 1).

[2]  The ALJ's decision is dated 2006, the parties agree that there is a
typographical error.

Commissioner when, after the review of additional exhibits[3] (AC- 1, Tr. at 350-353), the Appeals Council, on October 5, 2007, denied plaintiff's request for review.  (Tr. at 8-10*).  Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED IN PART**, only to the extent that this matter should be **REMANDED** to the administrative law judge for further review, and that defendant's motion for summary judgment be **DENIED**.

## II.    STATEMENT OF FACTS

### A.    ALJ Findings

Plaintiff was 41 years of age at the time of the most recent administrative hearing.  (Tr. at 357).  Plaintiff's relevant work history included approximately 12 years as a senior accountant, senior auditor, and an accounting manager.  (Tr. at

---

[3] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

81).  In denying plaintiff's claims, defendant Commissioner considered sarcoidosis, degenerative cervical disc disease, and depression as possible bases of disability.  (Tr. at 65-68).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since December 31, 2002.  (Tr. at 23).  The ALJ did not state that plaintiff had any "severe" impairments within the meaning of the second sequential step, but must have so concluded, because he continued through the remaining steps of the analysis.  (Tr. at 25).[4]  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Tr. at 25).  At step four, the ALJ found that plaintiff could not perform her previous work as a certified public accountant and accounting manager.  (Tr. at 29).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Tr. at 30).

B.    Parties' Arguments

---

[4]  Generally, if the ALJ finds no severe impairment or combination of impairments at Step II, then the claimant is not disabled.  The undersigned is perplexed as to the ALJ's lack of a clear conclusion in this regard.  Given the recommendations for remand, this issue should be re-examined by the ALJ at that time.

Report and Recommendation
Cross-Motions for Summary Judgment
*Gholston v. Comm'r*; No. 07-14902

1.    Plaintiff's claims of error

In this case, plaintiff's long time treating physician, Dr. Joe, a lung disease specialist, identified limitations that precluded the performance of even the very limited range of sedentary work identified in ALJ's decision as plaintiff's residual functional capacity. According to plaintiff, the ALJ erred in his assessment of Dr. Joe's well-reasoned and detailed opinion and failed to give evidence that it considered Social Security's own rules and regulations in evaluating the opinion of the treating physician.  Dr. Joe stated that plaintiff did not have the basic energy or stamina to work an eight-hour day, a 40-hour workweek. (Dkt. 9, citing, Tr. at 183).  He felt that plaintiff would have trouble getting to work regularly and would "miss a significant amount of time at work, call in, not be able to complete a day, maybe not complete a morning."  (Dkt. 9, citing, Tr. at 187).  Dr. Joe did not think that Ms. Gholston could perform even sedentary work on a sustained basis. (Dkt. 9, citing, Tr. at 197).

According to plaintiff, her primary problem is active systemic sarcoidosis. (Dkt. 9).  The ALJ, however, rejected plaintiff's primary impairment, concluded that "[w]hile Dr. Joe diagnosed the claimant with sarcoidosis, subsequent testing has not confirmed that diagnosis."  (Dkt. 9, citing, Tr. at 28).  The ALJ relied on several test results to reach this conclusion, including the biopsy of plaintiff's skin

lesions, which were negative for sarcoidosis, a normal EEG, and an EMG, which
did not show evidence of peripheral neuropathy, an MRI of the brain, which was
essentially normal, and the MRI of the cervical spine, which showed only mild
degenerative changes.  (Dkt. 9, citing, Tr. at 28).

According to plaintiff, the ALJ's decision ignores that plaintiff was
diagnosed with sarcoidosis as early as June 1996, when a chest x-ray showed
significant findings, including bilateral coarse interstitial markings, loss of upper
lobe volume on the right, with hilar and mediastinal adenopathy, which are
findings consistent with sarcoidosis.  (Dkt. 9, citing, Tr. at 254).  Pulmonary
function studies have shown some restrictive disease and lab studies showing an
increase in ACE (angiotension converting enzyme) were also consistent with
sarcoidosis.  (Dkt. 9, citing, Tr. at 163, 229, 235).  Plaintiff claims that the test
results on which the ALJ relied do not obviate the diagnosis, point to Dr. Joe's
testimony that the symptomatology of sarcoidosis might change over time after a
diagnosis has been made, but the disease never goes away.  (Dkt. 9, citing, Tr. at
166).  Plaintiff acknowledges that the record suggests some debate over the extent
of the sarcoidosis, such as whether plaintiff has central nervous system evidence
of the disease (neurosarcoidosis), she argues that there has never been any
question that her sarcoidosis, at a minimum, affects her lungs.  (Dkt. 9, citing, Tr.

at 254).

Plaintiff also criticizes the ALJ's reliance on the fact that plaintiff's neurologist did not disable her and that Dr. Joe opined on the "ultimate issue," which is an issue reserved to the Commissioner. (Dkt. 9). Plaintiff asserts that the ALJ's purported "reasons" for rejecting or giving less weight to plaintiff's treating physician's opinions are insufficient under the regulations. According to plaintiff, Dr. Joe's opinion deserved controlling, or at least great weight and suggests that reversal of the Commissioner's decision is appropriate, given the overwhelming evidence of disability in the record.

Plaintiff also argues that the ALJ failed to give appropriate consideration to her claims of pain and fatigue. (Dkt. 9, pp. 18-20). The decision merely states, "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Dkt. 9, quoting, Tr. at 26). According to plaintiff, given that the decision failed to find sarcoidosis to be one of plaintiff's medically determinable impairments (Tr. 28), the ALJ's "finding hardly rises to the level of an analysis." (Dkt. 9, p. 19). Moreover, the ALJ's previous decision contained

similar language regarding the assessment of pain and fatigue, which the Appeals Council found insufficient.  In remanding the matter to the ALJ, the Appeals Council directed that the ALJ consider the regulatory factors "in evaluating intensity, persistence and limiting effects of the alleged symptoms: objective medical evidence; medical opinions; daily activities; precipitating and aggravating factors; and the type, dosage, effectiveness and side effects of medication."  (Dkt. 9, quoting, Tr. at 257).  According to plaintiff, no such consideration was made.

2.     Commissioner's counter-motion for summary judgment

The Commissioner argues that the ALJ explained his rationale for not accepting the opinion of Dr. Joe and that rationale was based on substantial evidence.  (Dkt. 10).  The ALJ noted that, to the extent that Dr. Joe was making a statement that plaintiff was disabled, this is a decision left to the ALJ and not a doctor.  (Dkt. 10, citing, Tr. at 29; 20 C.F.R. § 404.1527(e)(1); SSR 96-5p, 61 Fed. Reg. 34471, 34474 (July 2, 1996) (a treating physician's conclusory opinion that an individual is "disabled" is never entitled to controlling weight or special significance)).  The Commissioner argues that the ALJ relied on the inconsistency between Dr. Joe's opinion and his own treating notes, along with the other treating physician records.  (Dkt. 10, citing, Tr. at 29).  For example, in November 2002, Dr. Joe noted that plaintiff had only "mild" headaches and only "some" shortness

of breath. (Dkt. 10, citing, Tr. at 29, 293). The Commissioner points to a June 1999 note from Dr. Elkiss stating that plaintiff's upper arm problems were myofascial in nature and could be treated conservatively with exercise. (Dkt. 10, citing, Tr. at 151). The Commissioner also points out that Dr. Elkiss did not consider medicating plaintiff until March 2000. (Dkt. 10, citing, Tr. at 145). At that point, her objective test results were essentially normal and her neurologic examination was "rather quite unremarkable." (Dkt. 10, citing, Tr. at 145, 220-23).

As for her headaches, Dr. Joe sent plaintiff to Dr. Leuchter, who, in July 2002, suggested that plaintiff's headaches may be migraine headaches, but there was no evidence that they were caused by neural sarcoidosis. (Dkt. 10, citing, Tr. at 211). Further, Dr. Leuchter noted that plaintiff's EEG and MRI scans were normal or near-normal. (Dkt. 10, citing, Tr. at 211). Thus, according to the Commissioner, the ALJ fully explained that he rejected Dr. Joe's opinion because it was not supported by the medical records and not consistent with other credible evidence in the file. Instead, the ALJ modified the RFC as set out by Dr. Holmes after his review of the records and a telephone call to Dr. Joe. (Dkt. 10, citing, Tr. at 109-15, 215). The Commissioner urges the Court to find, therefore, that substantial evidence supports this reasonable RFC.

The Commissioner also urges the Court to reject plaintiff's suggestion that the ALJ's non-acceptance of her diagnosis of sarcoidosis severely undercuts the ALJ's credibility finding.  (Dkt. 10).  Rather, according to the Commissioner, the ALJ properly concluded that, although Dr. Joe diagnosed sarcoidosis, the objective test results contradicted that finding.  (Dkt. 10, citing, Tr. 28). In support of its argument, the Commissioner points to Dr. Leuchter's conclusion that plaintiff's headaches were not caused by neural sarcoidosis.  (Dkt. 10, citing, Tr. at 211).  The Commissioner also relies on Dr. Simmons' note that plaintiff's skin lesions were negative for sarcoidosis.  (Dkt. 10, citing, Tr. at 208).  The Commissioner suggests that Dr. Joe's unwavering belief that plaintiff had sarcoidosis flies in the face of all the objective medical evidence.  Thus, according to the Commissioner the ALJ properly restricted plaintiff to sedentary work, which was within her ability to perform and further notes that "Dr. Elkiss wanted Plaintiff to exercise and, indeed, return to work."  (Dkt. 10).

       3.    Plaintiff's reply.

According to plaintiff's reply, nothing in the Commissioner's counter-motion for summary judgment overcomes the fundamental flaw in the ALJ's analysis of Dr. Joe's opinions.  (Dkt. 11).  Rather, according to plaintiff, Dr. Joe's opinion was based on objective clinical evidence documenting sarcoidosis, the

pulmonary manifestations of which have resulted in pain and fatigue that prevent plaintiff from sustaining work on a regular and continuing basis.  Plaintiff again points out that, while there may be some debate over the extent of the sarcoidosis, such as whether plaintiff has central nervous system evidence of the disease (neurosarcoidosis), or a dermatological manifestation, "there has never been any question that Ms. Gholston has a sarcoidosis that at minimum, affects her lungs." (Dkt. 11, citing, Tr. at 254).  Plaintiff argues that, regardless of whether she has neurosarcoidosis or a skin manifestation of the disease, the disease continues to affect her lungs, as evidenced by Dr. Joe's continuing treatment of plaintiff using prednisone.  Plaintiff points out that Dr. Joe tried several times to "wean" plaintiff off the prednisone, but she was unable to tolerate her symptoms without the medication.  Plaintiff also argues that all the test results on which the Commissioner relies to support the conclusion that plaintiff does not have sarcoidosis have nothing to do with the pulmonary manifestations of her disease. (Dkt. 11).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.,*

*198 Fed.Appx. 521, 526 (6th Cir. 2006)*.

    B.    <u>Governing Law</u>

        1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, *46 F.3d 510, 512 (6th Cir. 1994)*;

*accord, Bartyzel v. Comm'r of Soc. Sec.*, *74 Fed.Appx. 515, 524 (6th Cir. 2003)*.

There are several benefits programs under the Act, including the <u>Disability</u>

<u>Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.</u>) and the

<u>Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381</u>

<u>*et seq*.</u>).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, *475 F.3d 727, 730 (6th Cir. 2007)*.

"Disability" means:

        inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.     Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).   A decision

denying benefits "must contain specific reasons for the weight given to the

treating source's medical opinion, supported by the evidence in the case record,

and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for

that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a

treating physician should be given controlling weight if it is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and is not

"inconsistent with the other substantial evidence in [the] case record."  *Wilson*,

378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating

source if the claimant sees her "with a frequency consistent with accepted medical

practice for the type of treatment and/or evaluation required for [the] medical

condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating

physician's opinion, 'he must set forth the reasons for rejecting the opinion in his

decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation

omitted).  "Claimants are entitled to receive good reasons for the weight accorded

their treating sources independent of their substantive right to receive disability

benefits."  *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

"The opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'"  *Adams

v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

  C. <u>Analysis and Conclusions</u>

  The ALJ determined that plaintiff possessed the residual functional capacity

to return to a limited range of sedentary or sit down type work.  (Tr. at 26).

> Sedentary work involves lifting no more than 10 pounds
> at a time and occasionally lifting and carrying articles
> like docket files, ledgers, and small tools.  Although a
> sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often
> necessary in carrying out job duties.  Jobs are sedentary
> if walking and standing are required occasionally and

other sedentary criteria are met.

20 C.F.R. 404.1567(a) (1991).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of
> exertion, periods of standing or walking should generally
> total no more than about 2 hours of an 8-hour workday,
> and sitting should generally total approximately 6 hours
> of an 8-hour workday.  Work processes in specific jobs
> will dictate how often and how long a person will need
> to be on his or her feet to obtain or return small articles.

20 C.F.R. § 404.1567(b). As noted earlier, if the Commissioner's decision is

supported by substantial evidence, the decision must be affirmed even if the court

would have decided the matter differently and even where substantial evidence

supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800

F.2d at 545.  In other words, where substantial evidence supports the ALJ's

decision, it must be upheld.  After review of the record, I conclude that the ALJ

did not utilize the proper legal standard in his application of the Commissioner's

five-step disability analysis to plaintiff's claim and this matter should be remanded

for further review and investigation for the following reasons.

1.      Treating physician evidence

Dr. Joe is board certified in internal medicine with a sub-specialty in

pulmonary medicine and chest diseases.  (Tr. 155).  Plaintiff began treating with

him in early 1999.  (Tr. at 156).  According to Dr. Joe, plaintiff's chronic skin

lesions are associated with a connective tissue type of disease and likely reflect

systemic involvement of the sarcoidosis.  (Tr. at 160).  On September 4, 2001, Dr.

Joe provided a sworn statement concerning plaintiff's condition, indicating that he

had treated her under the diagnosis of pulmonary disseminated sarcoidosis,

neurosarcoidosis and respiratory insufficiency.  (Tr. 156).  Dr. Joe noted that

plaintiff had consistently experienced a constellation of symptoms including

shortness of breath, an inability to exert herself, headaches, and dizziness. (Tr. at

159-60).  Dr. Joe also noted the skin lesions and anemia were also associated with

the underlying sarcoidosis. (Tr. 160-165).  Dr. Joe felt that the headaches,

dizziness, and vertigo were suspicious for a neurologic component of the

sarcoidosis.  (Tr. 169).  As a clinician, he related these symptoms to plaintiff's

underlying disease process. (Tr. 171).  He explained that, in his opinion,

diagnostic testing, short of an invasive brain biopsy, lagged behind the clinical

manifestations of the disease.  (Tr. 171-72).  Dr. Joe opined that the findings on

the MRI of the brain showing increased signal abnormalities could well be the

result of the sarcoidosis. (Tr. 175).  Despite the fact that the radiologist did not feel

this was evidence of neurosarcoidosis, Dr. Joe noted, "This patient has enough

clinical findings to make me suspect that there is a possibility of some neurosarcoidosis present irrespective of his statement." (Tr. 175-76). For example, Dr. Joe concluded that plaintiff's self-described symptoms of a "brain fog, lack of concentration," could relate to her sarcoidosis. (Tr. 179).

Dr. Joe also confirmed that fatigue is a common symptom of sarcoidosis, describing the disease:

> Sarcoidosis basically causes your immune system to function at a lower level; therefore, your ability to do things like fight off infection, exert yourself, your body's need to rise to the occasion to function at a higher level are suppressed. The immune system does lots of things in the body, and one of them is to give you the ability to fight off various germs . . . All of the sarcoid patients who have a significant degree of sarcoid to the degree that it involves there respiratory status all have trouble breathing, get tired easy, can't exert themselves, et cetera, a constellation of symptoms.

(Tr. at 180-81). Dr. Joe also stated that the use of corticosteroids, such as prednisone, has side effects of tiredness, fatigue, and muscle weakness. (Tr. at 185). Dr. Joe acknowledged that fatigue and pain were likely activity dependent. (Tr. at 193-94). He also noted that plaintiff's reported experience of fatigue and pain were consistent with his findings and diagnoses and that he found her symptoms credible. (Tr. at 194). Dr. Joe opined that plaintiff did not have the basic energy or stamina to work an eight-hour day, a 40-hour workweek and that

she would have trouble's getting to work regularly and would "miss a significant amount of time at work, call in, not be able to complete a day, maybe not complete a morning." (Tr. at 183, Tr. 187).  Even at a sedentary job, according to Dr. Joe, plaintiff would likely "be found at her desk with her head down, be found in the lounge needing to lie down."  (Tr. at 197-98).  Simply, he did not think that plaintiff could perform work for even four hours a day on a consistent basis.  (Tr. 200).  "I couldn't see her trying to put in an eight-hour day with multiple break periods or rest periods. . . I could not recommend that she could agree to working like that. And if she did, it would be against medical advice."  (Tr. 201).

The overwhelming evidence in the record supports plaintiff's claim that she suffers from sarcoidosis.  The ALJ's conclusion that plaintiff does not have this disease appear to be made from whole cloth, and is contrary to substantial evidence in the record.  None of plaintiff's treating physicians dispute that plaintiff suffers from this disease.  *See e.g.* (Tr. at 116, Dr. Leuchter's 1/24/03 note "In view of her history of sarcoidosis...").  Nothing in their reports or notes suggest that merely because plaintiff does not have a dermatological manifestation of sarcoidosis and may not have neurosarcoidosis that she (a) does not suffer from this disease; or (b) that there is no objective medical evidence to support this diagnosis.

For example, Dr. Elkiss wrote in an early treatment note that, while he believed that "most of the problems with this patient's upper extremities are myofascial, related to her neck and shoulders," "she could have some venous or lymphatic occlusive disease relative to the sarcoid." (Tr. at 151). Dr. Elkiss wrote in his report that plaintiff "has had sarcoidosis for five years." (Tr. at 150). A few months later, in October 1999, Dr. Elkiss examined plaintiff again. He wrote that he was concerned about plaintiff's "hyperreflexia, which suggests an upper motor neuron disturbance." (Tr. at 148). He recommended a brain and spinal MRI "to see if there is anything related to the sarcoidosis that may be going on." *Id*. Plaintiff reported to Dr. Elkiss that when she tried to write or use her hands in other ways, she would get pain in her shoulder blade and in the upper trapezius, which was related to her tight musculature. She also had pain with moving her fingers and curling of the toes. Dr. Elkiss thought that an anti-spasticity medication such as Lioresal might be useful for plaintiff's foot symptoms. (Tr. at 148). While the Commissioner urges that Dr. Elkiss merely treated plaintiff for some mild "myofascial" complaints, in November 1999, Dr. Elkiss found that conservative treatment of her "chronic myofascial syndrome involving the neck and shoulder with some secondary nerve compression, brachial plexus and peripheral nerve sites" had been a failure. (Tr. at 147).

In March 2000, Dr. Elkiss noted that her MRI showed "tiny foci of signal abnormality, quite similar to what was described in May of 1997, though they did not describe a spot in the corpus callosum as they did this time." (Tr. at 147). While the MRI report concluded that there was no evidence of neurosarcoidosis, it also concluded "a demyelinating process such as multiple sclerosis should be considered." (Tr. at 222). The Commissioner makes much of the fact that plaintiff's brain lesions "disappeared" in October 1997, after they "appeared" in May 1997. However, it is clear that these lesions had "returned" by March 2000, lending support to Dr. Joe's opinions regarding the strange and ever-changing nature of sarcoidosis. Dr. Elkiss also prescribed Lioresal for plaintiff's muscle spasms and tightness. (Tr. at 145). Dr. Leuchter performed a visual exam on plaintiff, which showed a mild delay of the left optic nerve indicative of previous inflammation, possibly from sarcoid, but no active disease. (Tr. 211).

The Commissioner also points to Dr. Elkiss's suggestion that plaintiff seek vocational rehabilitation to see if there was work she was able to do as evidence that plaintiff was able to work and as evidence undercutting Dr. Joe's opinions. Dr. Elkiss, however, declined to offer an opinion about whether and to what extent plaintiff was capable of working. (Tr. at 133). He simply stated that he did not know and recommended that a functional capacity evaluation be performed. (Tr.

at 133).  Nothing in Dr. Elkiss's notes or reports are contrary to Dr. Joe's opinions. Rather, they are fully supportive of plaintiff's symptoms, limitations, and disease.

In the view of the undersigned, the Commissioner failed to give proper weight to Dr. Joe's opinions regarding the nature of plaintiff's disease, its symptoms, and how it affected plaintiff's ability to function and work.  An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir., Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). In addition, the ALJ impermissibly reinterpreted some of plaintiff's test results to conclude that she does not suffer from sarcoidosis, when none of her treating physicians have reached this conclusion.  "By independently reviewing and interpreting the laboratory reports the ALJ impermissibly substitute[s] his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."  *McCain*, 58 Fed.Appx. at 193.  In doing so, the ALJ failed to consider the objective test results that directly

confirm Dr. Joe's findings and diagnosis.  For example, a June 1996 chest x-ray

showed significant findings, including bilateral coarse interstitial markings, loss of

upper lobe volume loss on the right, with hilar and mediastinal adenopathy, which

are findings consistent with sarcoidosis.  (Tr. at 254).  Further, pulmonary function

studies have shown some restrictive disease and lab studies showing an increase in

ACE (angiotension converting enzyme) were also consistent with sarcoidosis.  (Tr.

at 163, 229, 235).  The Commissioner ignored, and improperly reinterpreted, the

substantial, if not overwhelming, evidence of plaintiff's disease and related

conditions and symptoms.

> 2.    Medication side effects.

Contrary to the direction of the Appeals Council after the first remand, the

ALJ failed to give due consideration to the side effects of plaintiff's medications,

Prednisone and Lioresal.[5]  "The side effects of long-term Prednisone, however,

can be significant, including muscle weakness, mood symptoms, diabetes, and risk

of infection."  *Flores v. Massanari*, 19 Fed.Appx. 393, 396 (7th Cir. 2001).  The

Appeals Council found, among other defects in the ALJ's initial decision in this

---

[5]  The common side effects of Lioresal (aka Baclofen) include drowsiness,
dizziness, weakness, confusion, and upset stomach. *See e.g.*
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682530.html

Report and Recommendation
Cross-Motions for Summary Judgment
*Gholston v. Comm'r*; No. 07-14902

case, that the decision failed to give consideration to "the type, dosage, effectiveness and side effects of medication." (Tr. at 257). In summarizing the remand order of the Appeals Council, the ALJ failed to even mention the issue of medication side effects. (Tr. at 23). And, an analysis of the side effects of plaintiff's medications and their impact on plaintiff's ability to work is entirely absent from the ALJ's decision. (Tr. at 23-31). Rather, the ALJ, apparently, in rejecting Dr. Joe's opinions, also rejected his testimony regarding the side effects of Prednisone (tiredness, fatigue, and proximal muscle weakness). (Tr. at 27). The ALJ neither mentioned Lioresal, gave consideration to any side effects from which plaintiff might be suffering, nor contacted the prescribing physician to obtain information in this regard. Given the undersigned's conclusion that the ALJ failed to give proper weight to Dr. Joe's opinions, and the ALJ's failure to follow the directive of the Appeals Council to consider *all* of plaintiff's medication side effects, a remand to complete this investigation and analysis is appropriate.

3.      Residual functional capacity and credibility.

The Commissioner's failure to give proper weight to Dr. Joe's opinions and the supporting, objective medical evidence, completely undercuts his credibility findings and related RFC findings. The residual functional capacity circumscribes

"the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, however, much of the ALJ's credibility determinations were based on his rejection of Dr. Joe's opinions and improper re-interpretation of the objective test results. Based on the foregoing, the undersigned suggests that the ALJ failed to fully consider the nature and extent of plaintiff's limitations. Given this recommendation, the undersigned also suggests that the ALJ reassess his

credibility determinations.  As set forth in SSR 96-5p, a "decision must contain

specific reasons for the finding on credibility, supported by the evidence in the

case record, and must be sufficiently specific to make clear to the individual and

any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight."  *Id*.  As set forth above, the

undersigned suggests that the ALJ erred by failing to provide a proper or sufficient

basis for rejecting Dr. Joe's opinions and also erred by failing to sufficiently

investigate or analyze plaintiff's medication side effects.  Based on these

judgments, the undersigned cannot conclude that the ALJ's credibility

determination is grounded in substantial evidence. While this record may not

justify a remand for an award of benefits, *see Faucher v. Sec'y of Health and

Human Serv.*, 17 F.3d 171, 176 (6th Cir. 1994),[6] a remand is nonetheless required.

### 4.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which

ultimately became the final decision of the Commissioner, is not within that "zone

---

[6] "If a court determines that substantial evidence does not support the
Secretary's decision, the court can reverse the decision and immediately award
benefits only if all essential factual issues have been resolved and the record
adequately establishes a plaintiff's entitlement to benefits."  *Faucher*, 17 F.3d at
176.

of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, and the decision is not supported by substantial evidence, justifying a remand and investigation consistent with this Report and Recommendation.

## III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **GRANTED IN PART**, only to the extent that this matter should be **REMANDED** to the administrative law judge for further review and investigation, and that defendant's motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any

objections must be served on this Magistrate Judge.

Within 10 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not exceed 20 pages in length unless such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections by motion and order. If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

s/Michael Hluchaniuk
Date: _____                  Michael Hluchaniuk
                                     United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on _____, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: Derri T. Thomas, Evan A. Zagoria, and Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant